(9 Misc. Rep. 626.)

NATIONAL PARK BANK OF NEW YORK v. GODDARD et al.

(Supreme Court, Special Term, New York County.  September 24, 1894.)

1. EQUITY—JURISDICTION—CONFLICTING CLAIMS TO ATTACHED PROPERTY.
   After goods had been levied on under attachment, one who had sold to the debtor materials used in the manufacture of the goods brought replevin therefor, claiming to rescind the sale.  The attaching creditors then sued in equity for an adjudication of the rights of all parties to such goods.  *Held* that, though the replevin suit could not be maintained, because it was instituted after the goods had been seized under attachment (Code Civ. Proc. § 1690), the rescission of the sale displaced the lien of the attachment in favor of the original title, which would be protected in the equitable action to the extent of the value of the materials actually used in manufacturing the attached goods.

2. CONFUSION OF GOODS—RIGHTS OF THIRD PERSONS.
   The rule that, where the goods of an innocent person have been wrongfully mingled with the goods of another so that they cannot be separated, the whole bulk will be awarded to the innocent party, does not apply where the interests of third persons intervene, and full protection can otherwise be given to the innocent person whose goods were wrongfully used.

3. REPLEVIN—WHEN LIES—RETROACTIVE STATUTE.
   Laws 1894, c. 305, modifying Code Civ. Proc. § 1690, so as to provide that replevin cannot be maintained for property taken under attachment, unless plaintiff had the right of possession at the commencement of the action, is not retroactive.

Action by the National Park Bank of New York against Warren N. Goddard and others.  Judgment for defendants.

Francis M. Barlow, for plaintiff.
Louis Marshall, for defendants.

PATTERSON, J.  By the agreed statement, setting forth all the facts to be considered by the court in deciding this cause, it appears that the plaintiff sues to procure an adjudication of the rights of various claimants to a fund now in the hands of a receiver of this court, and which fund consists of the proceeds of certain manufactured garments, which were sold by the receiver under an order of the court.  Various claims to the goods were urged by many parties, among them the plaintiff and such of the defendants as are now before the court, and whose names appear in the statement referred to.  The plaintiff claims under an attachment, judgment, and execution against the property of Levy Bros.  The defendants now before the court claim by title revested in them to goods sold and delivered by them to Levy Bros., the sale having been procured to be made by fraudulent representations of Levy Bros., and the defendants having rescinded the sales, and elected to treat them as null.  It also appears that the sheriff of the city of New York levied upon the property which the defendants had sold to Levy Bros., such levy being under the attachment in the plaintiff's action

against that firm. This levy under the attachment was made before the defendants elected to rescind the sales. While the goods were in the sheriff's possession under the attachment, the defendants brought actions of replevin, and issued process to the coroner, who seized the manufactured goods, for the making of which, in part, the defendants' merchandise had been used. There were altogether some 50 actions of replevin brought, and thereupon this suit was instituted for the express purpose of having an adjudication by this court as to the rights of the parties to all those actions in and to the goods. Interlocutory proceedings were had in this action, by which the receiver of the merchandise was appointed, and he was instructed to sell the property and to hold the proceeds subject to the order of the court. The actions in replevin were enjoined, and the various defendants have come into court with their answers, setting up their claims, and insisting upon their rights to the fund, the subject of the litigation. It further appears by the agreed statement of facts that the goods sold by the defendants to Levy Bros. were made up, with other goods, into garments, and the defendants now urge that, by reason of the changed form into which their merchandise has been put, and the impossibility of separating that merchandise from the garments without destroying its value, they are entitled to the proceeds of sale of all the goods, on the principle which applies to cases of accretion and confusion of property. In passing upon these claims it is apparent at the outset that when the attachment issued in the plaintiff's action against Levy Bros. the defendants in that action had an interest in all the merchandise which could be levied upon and held by the sheriff, and also that, as the property was situated at the time the defendants' replevin actions were begun, it then being in the custody of the sheriff, and hence in the custody of the law, those actions of replevin were not maintainable, and possession of the goods could not be lawfully obtained by the defendants under the replevin suits. Wise v. Grant, 140 N. Y. 593, 35 N. E. 1078. As the matter stood, therefore, when the actions in replevin were begun, which was subsequent to the levy under the attachment, the sheriff had a lien upon the merchandise, and the plaintiffs in the replevin actions could not recover the goods. But, notwithstanding that condition of things, when the defendants now before the court elected to rescind the sales, as they did by their demands on the sheriff and the institution of replevin actions (Moller v. Tuska, 87 N. Y. 166; Powers v. Benedict, 88 N. Y. 605), the lien of the sheriff was displaced in favor of the original title of the sellers of the goods; so that, when the present action was begun, this plaintiff and the defendants now claiming were standing before the court, the former on an alleged right as a lien creditor, the latter with a title revested in them to the merchandise, but prohibited from taking possession by reason of the statute, which, in consequence only of the particular situation of the property, deprived them of the substantial right to reduce it to actual possession.

These are the claims, and that is the condition in which they come before the court, and they must be regarded with reference to the equitable rights of the parties, for it is exactly the aspect in which the plaintiff by bringing this suit has chosen to put the matter, and in which it asks the judgment of the court. It seems to me, therefore, that the question of legal right to possession, as predicated only upon the defendants' claims under the actions of replevin, is not to control in the disposition of the cause, and that, although the actions of replevin were not maintainable, and the property could not be taken from the possession of the sheriff in actions of replevin, yet, as the lien of the sheriff was displaced by the rescission, and the title was revested by the act of rescission, the defendants have shown an equitable title, which can be protected and enforced in this action, for that would seem to be the necessary effect of the extinction of whatever lien existed in favor of the plaintiff by reason of the sheriff's possession; so that, although these actions of replevin were futile as remedies, they nevertheless were effectual as evidences of the intent and determination on the part of the defendants to rescind the contracts of sale, and for the purpose of the restoration of title of the goods to themselves. It seems to me they therefore stand as having paramount claims in a court of equity to their particular goods, and consequently to their proceeds, now in the custody of the officer of the court. This follows from their being the real owners of the goods; and while, under ordinary circumstances, the sheriff would not be enjoined from proceeding under an execution, yet, the plaintiff having brought the whole controversy into court, it may be disposed of as justice and equity dictate. It is claimed, however, by the learned counsel for the plaintiff that the only remedy open to the defendants, upon the state of facts disclosed by the submitted record, was in trover against the sheriff. That such action would lie, I think, is clear, and I also concur in the argument that nothing in the pleadings in this cause, or in any of the papers now before the court, can turn the defendants' claims into technical actions of conversion against the sheriff or the plaintiff. But I apprehend that the subject-matter of this action does not come before the court upon a question of pleading, nor are these claims to be disposed of otherwise than according to the equities as they appear by the concession of all of the respective parties. They have been brought before the court by the act of the plaintiff in instituting the suit, and in so doing it has shown that the lien of its process upon the goods has been superseded, and it has also shown that the clear title of the defendants to their goods has been restored; and it would be unjust for the plaintiff to insist that the defendants should be deprived of their equitable rights when the plaintiff itself has no superior equitable claim to have the proceeds of the goods applied to the payment of its debt. A court of equity will not aid in applying the property of a third party to the payment of the debt of a stranger; and,

while the defendants gain nothing by their replevin suits, they may stand here on their ownership.

But while I am of the opinion upon all the facts that the defendants are entitled to protection, it can only be granted to the extent of the value of their merchandise which entered into the manufacture of the garments sold. It is true that the general rule of law respecting the accretion and confusion of property is that, as between an innocent party and a wrongdoer, where the property of the former has been mingled with and cannot be separated from that of the latter, the whole bulk should be adjudged to the former, and that is a rule of strict application between the parties to the transaction. But where the interests of other persons intervene, and full protection can otherwise be given to the innocent person whose goods are thus wrongfully used, the rule should not be applied. The other parties in this case are the creditors of Levy Bros. It is sufficient for the indemnity and protection of the defendants in this cause that so much of the proceeds of the goods be adjudged to them as is equal to the price at which they sold the goods to Levy Bros., and interest, and to that extent a decree will be directed in their favor.

Before dismissing the subject, it is proper to consider a contention made by the defendants,—that, notwithstanding the general rule concerning the right to maintain replevin as laid down in the Wise Case, a particular rule of decision has been made in this case, recognizing the validity of the actions brought by these defendants against the sheriff, and that, therefore, the defendants have a legal as well as equitable claim to relief. This contention is based upon certain interlocutory or collateral proceedings which were had in this case concerning a title to piece or unmanufactured goods which, by the consent of the plaintiff, were restored to the defendants. I do not think any of these proceedings should be regarded as a final adjudication of the question as to the defendants' right to the possession of all the goods, manufactured as well as unmanufactured. It is quite apparent from an inspection of these papers that it was the intention of the parties, and of the court in making its orders upon the subject, to separate the two classes of goods; and, while the right to possession of the goods released from the suit was recognized, it is expressly provided that the proceeds of other goods (and that refers to the manufactured articles) should be brought into court to await its final order. The clear inference from this is that neither of the parties contemplated that any estoppel should arise by reason of this merely interlocutory proceeding. This question was raised as one of evidence, and is disposed of on the record by the rejection of the documentary evidence which was offered to sustain this claim of an estoppel by adjudication.

One other question was discussed, to which reference should be made, and that is the claim of the learned counsel for the defendants that by the amendment of the Code of Civil Procedure, chapter 305 of the Laws of 1894, modifying the provisions of section 1690, the

decision in the case of Wise v. Grant has become nullified, and that this amendment has a retroactive operation, and consequently affects this case; so that the actions of replevin, although untenable when brought, have become established by virtue of this subsequent legislation.   I do not consider this amendment as having any retrospective effect, nor do I think the intention is to be attributed to the legislature of enacting a new rule of law to control a pending cause, for such a construction would be to confer a right of possession, which is a substantial legal right, as contradistinguished from a mere remedy, and which right had no existence at the time the replevin suits were brought.   The defendants' rights are purely equitable, and they are considered and recognized only in that light.

A decree in accordance with these views may be entered, to be prepared by the attorney for the defendants, and to be settled on two days' notice.